IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMERICAN INDIAN AND ALASKA NATIVE
CULTURE AND ARTS DEVELOPMENT
INSTITUTE,

      Plaintiff,

      vs.                                                                                    No. CIV 98-1192 JC/WWD

DAYMON & ASSOCIATES, a New Mexico
Partnership, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon the Defendants' Motion for Summary Judgment, filed August 24, 1999 *(Doc. 35)*.[1] Defendants argue that summary judgment is appropriate in this case because Plaintiff cannot make a showing of proximate causation of damages allegedly resulting from the professional negligence of Defendants. Defendants also argue that their actions giving rise to Plaintiff's claims were matters solely within their professional judgment and so cannot be a basis for professional liability. In the alternative, Defendants move for partial summary judgment dismissing any claims for recoupment of professional fees paid by Plaintiff to Defendants and related to forged endorsements on student checks.

**I.**     **Background**

Plaintiff operates a college of fine arts as well as the Museum of Indian Arts and Culture in Santa Fe, New Mexico. At the end of October, 1995, Plaintiff entered into an engagement or

---

[1] The Court notes that Plaintiff in its response brief attached more than 50 pages of exhibits in violation of D.N.M.LR-Civ. 10.5. That being so, I will only consider the first 50 pages of those exhibits, Exhibits A through J, and strike the remaining exhibits, Exhibits K through T.

contract with Defendant Daymon & Associates, an accounting firm, to provide interim accounting services until a permanent controller could be hired. Defendant Margaret Garduno is an employee of Defendant Daymon & Associates and served as "the lead in the role of the new controller" for this engagement. Engagement Letter, dated Oct. 31, 1995, Exhibit A (attached to Memorandum in Support of Defendants' Motion for Summary Judgment (Memo), filed Aug. 24, 1999 *(Doc. 36)*). Defendant Daymon is a principal of Daymon & Associates and oversaw the engagement at issue.

The engagement letter stated that Defendant Daymon & Associates would perform "the duties of the controller for the Institute [Plaintiff], handling all accounting and other financial matters, to ensure the continuity of the daily operations of the Institute through the conduct of the current audit and until daily operations of the Institute through the conduct of the current audit and until the Institute hires a new controller." *Id*. The first phase of the engagement stated that Defendant Daymon & Associates would "work closely with the current controller beginning November 1, 1995, until her departure on December 1, 1995, to learn the daily accounting and other financial operations of the Institute and to provide a transitioning of the controller's duties to us." *Id*. Phase two, the last phase of the engagement, stated that beginning December 1, 1995, Defendant Daymon & Associates would "act in the capacity of the controller for the Institute and perform all duties associated with that role, including training a permanent controller to be hired by the Institute." *Id*. The engagement letter further stated that

> During both phases, we will review internal control processes and make recommendations to you for changes as considered necessary under the circumstance, and help implement changes (including training employees). Note that the services we are providing cannot be relied upon to uncover irregularities. However, if any such matters come to our attention, we will advise you accordingly.

*Id*. Plaintiff's new controller, Al Maestas, began work on January 2, 1996 and assumed his responsibility as manager of the accounting department at that time. Deposition of Al Maestas, Exhibit B (Attached to Memo).

On or about November 13, 1995, Rosendo Tapia, an employee of Plaintiff working in the accounting department, altered a check in the amount of $280,000 drawn on Plaintiff's museum business account. Tapia deposited the check in his own bank account. Al Maestas discovered the embezzlement in July 1996. Finance Department Special Report, Exhibit M (attached to Reply in Support of Defendants' Motion for Summary Judgment (Reply), filed Aug. 24, 1999 *(Doc. 38)*). Tapia also allegedly forged signatures on several student checks and retained those monies from March 1995 to July 1995. Complaint for Breach of Contract, Negligence and Unfair Trade Practices (Complaint) at ¶ 27, filed Aug. 31, 1998 (attached to Notice of Removal, filed Sept. 30, 1998 *(Doc. 1)*).

Plaintiff's Complaint contains four counts. Count I alleges negligence against Defendant Daymon & Associates for not exercising "good faith and ordinary care in failing to detect the missing $280,000 or the missing student checks despite serving as the [Plaintiff's] controller and accountants." Complaint at ¶ 34. In other words, Plaintiff alleges that Defendant Daymon & Associates "fail[ed] to properly act as reasonable accountants. . . ." *Id*. at ¶ 35. Count II alleges negligence against Defendant Daymon for "failing to act according to a reasonable standard of care as an accountant and/or failing to supervise his employees working for the [Plaintiff]." *Id*. at ¶ 41. Count III alleges negligence against Defendant Garduno for failing "to exercise reasonable care in acting as an accountant for the [Plaintiff]." *Id*. at ¶ 47. Count IV alleges a breach of contract and covenant of good faith and fair dealing against Defendant Daymon & Associates. Count IV also

contends that Defendant "Daymon & Associates failed to comply with the terms of the contract, and failed to perform their duties thereunder in accordance with generally accepted accounting practices as a reasonable accounting firm would perform under the contract." *Id*. at ¶ 53. Consequently, Plaintiff believes that Defendant "Daymon & Associates violated the covenant of good faith and fair dealing." *Id*. at ¶ 54. Count V alleges unfair trade practices against Defendants Daymon & Associates and Daymon. Specifically, Plaintiff asserts that Defendants "Daymon & Associates and Donald Daymon acted willfully in failing to provide the quality of accounting services they contracted to provide." *Id*. at ¶ 62.

## II. **Standard of Review**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The Federal Rules of Civil Procedure provide that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321-23 (1986). Once the movant has made such a showing, the adverse party "may not rest upon the mere allegations or denials of [their] pleading[s], [they] must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). In reviewing a motion for summary judgment, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir. 1995), even when it is produced by the moving party." *Buchanan v. Sherrill*, 51 F.3d 227, 228 (10th Cir. 1995). "Summary judgment is only appropriate if 'there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1266 (10th Cir. 1996) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Thus, to defeat a summary judgment motion, the non-movant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.    Discussion

#### A.    Proximate Causation of Damages

Defendants argue primarily that summary judgment is appropriate in this case because Plaintiff has not established that Defendants' inaction proximately caused Plaintiff's damages under either the negligence or breach of contract claims. In *Rancho del Villacito Condominiums, Inc. v. Weisfeld*, 121 N.M. 52, 55-6, 908 P.2d 745, 749 (1995), a legal malpractice[2] case, the Court noted that to establish a malpractice cause of action the plaintiff must demonstrate that "the negligence resulted in and was the proximate cause of loss to the plaintiff." To demonstrate proximate cause "[w]hen the attorney's negligence involves failure to take certain action, the client must show that if the attorney had acted then the client would not have suffered damage, at least not to the same degree." *Carrillo v. Coors*, 120 N.M. 283, 288, 901 P.2d 214, 219 (Ct. App. 1995) (citing *Resolution Trust Corp. v. Barnhart*, 116 N.M. 384, 388, 862 P.2d 1243, 1247 (Ct. App.), *cert. denied*, 116 N.M. 364, 862 P.2d 1223 (1993)). As with negligence claims, breach of contract claims in New Mexico likewise require a demonstration of causation of damages. *See Camino Real Mobile Home Park Partnership*

---

[2] New Mexico courts have applied holdings from professional legal malpractice cases to professional accountant malpractice cases. *See Wiste v. Neff and Co., C.P.A.*, 126 N.M. 232, 967 P.2d 1172 (Ct. App.), *cert. denied*, 126 N.M. 534, 972 P.2d 353 (1998) (applying the same two-prong test to ascertain when a legal malpractice and accountant malpractice cause of action accrues.)

*v. Wolfe*, 119 N.M. 436, 442, 445, 891 P.2d 1190, 1196, 1199 (1995); *Jackson v. Goad*, 73 N.M. 19, 23, 385 P.2d 279, 283 (1963).

Defendants argue that Plaintiff has not come forth with evidence to show that if Defendants had discovered Tapia's embezzlement within the 30- to 60-day period specified by Plaintiff's expert, Thomas Burrage, Plaintiff would not have suffered damages, at least not to the same degree. *See* Expert Witness Report of Thomas F. Burrage, C.P.A. at 14, Exhibit C (attached to Memo) ("The engagement of Daymon & Associates to serve as controller and/or chief financial officer would have included as part of the ordinary, accepted duties of those positions procedures which, if timely and properly carried out, would have detected the theft in question within 30 to 60 days of its occurrence.") Mr. Burrage, however, in his deposition had no opinion as to the issue of proximate cause of damages. Deposition of Thomas Burrage, Exhibit E (attached to Memo). Plaintiff argues, on the other hand, that if Defendants had discovered the embezzlement in November or December 1995, Tapia would have still had cash from the embezzlement in his bank account which the FBI could have seized.

A month after the embezzlement occurred, Tapia had approximately $50,000 in his bank account. Tapia Bank Statement, Exhibit H (attached to Plaintiff's Response to Defendants' Motion for Summary Judgment (Response), filed Aug. 24, 1999 *(Doc. 37)*. By January 10, 1996, Tapia had under $3,000 in his bank account. *Id*. When the embezzlement was discovered in July 1996, Plaintiff's Chief Financial Officer, Mary Susan Casarez, and others reported the embezzlement to the FBI. Deposition of Mary Susan Casarez, Exhibit D (attached to Response). Ms. Casarez reported that "[t]he FBI agents advised us that they would take our evidence to the U. S. Attorney who would present it to the Grand Jury which meets the first week of each month. They would ask the Grand

Jury to issue a subpoena to acquire bank records. The FBI will then begin its investigation. There is no way to estimate how long this will take." Special Report, Exhibit M (attached to Reply).

Defendants contend as a preliminary matter that Plaintiff's evidence of Tapia's bank account statement found in Plaintiff's Exhibit H is subject to exclusion because it had not been disclosed to Plaintiff until it appeared as Exhibit H, after discovery had closed. Because Defendants necessarily brought this contention in their reply brief, Plaintiff has had no opportunity to respond to the Defendants' accusation of failure to disclose. I, therefore, find that this issue is more properly addressed in a FED. R. CIV. P. 37(c)(1) motion.

The undisputed evidence concerning the embezzlement is at best unclear as to whether the FBI could have seized any more of Tapia's assets within 30 to 60 days after the embezzlement than it could have when the embezzlement was discovered in July 1996. Although Tapia's bank account might have been fairly depleted 60 days after the embezzlement, Tapia might have had other assets worth seizing. Moreover, the evidence is not conclusive on how long it would have taken for a seizure to take place. The evidence simply contains too many possible nuances to be decided on summary judgment. I find, therefore, that Defendants have failed to show that there is no genuine issue of fact as to Plaintiff's failure to show proximate cause. Accordingly, summary judgment is not appropriate on the issue of proximate cause with respect to the $280,000 embezzlement.[3]

### B. "Judgmental" Immunity

Defendants also argue that summary judgment should be granted in this case because Defendants acted in good faith in carrying out the engagement. Whether one has acted in good faith

---

[3] The Court notes that the parties' causation arguments concerned the $280,000 embezzlement and did not refer to the separate claim of forging student checks.

is an issue of fact for the jury to decide. *See, e.g., McKay v. Farmers & Stockmens Bank of Clayton*, 92 N.M. 181, 183, 585 P.2d 325, 327 (Ct. App.), *cert. denied*, 92 N.M. 79, 582 P.2d 1292 (1978) ("good faith" is generally a question of fact). Consequently, Defendants' "judgmental" immunity argument cannot be a grounds for summary judgment.

### C. Recoupment of Professional Fees

Defendants next argue that summary judgment should be granted on any claims for recoupment of professional fees under the doctrine of account stated. The doctrine of account stated "operates as an admission by each party that a certain sum of money is due." *Hinkle, Cox, Eaton, Coffield, & Hensley v. Cadle Co. of Ohio, Inc.*, 115 N.M. 152, 157, 848 P.2d 1079, 1084 (1993) (citation omitted). "Neither party, in the absence of fraud or mistake, can question the correctness of the stated sum." *Id*. In this case, Plaintiff contends that it did not receive all of the services it contracted for. *See* Count V (Unfair Trade Practices Act claim). In other words, Plaintiff alleges that a fraud was committed on it. Under these circumstances, I find that summary judgment based on the doctrine of account stated is not warranted.[4]

### D. The Forged Student Checks

I will now discuss Defendants' argument for summary judgment on the forged student checks claim as alleged in Count I and incorporated in Count IV. Defendants specifically assert that the alleged malpractice in failing to detect the forged student checks is not supported by expert testimony and so is subject to summary judgment. Expert testimony is usually required to establish that a professional failed to act with reasonable skill. *Rancho del Villacito Condominiums, Inc.*, 121 N.M.

---

[4] On October 4, 1999, I found that Plaintiff has 20 days to amend its Complaint to state a claim under the Unfair Trade Practices Act. This claim is, therefore, still viable unless Plaintiff fails to amend its Complaint.

at 55-6, 908 P.2d at 749 (1995)(quoting from *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 162-163, 848 P.2d. 1086, 1089-90 (Ct. App.), *cert. denied*, 115 N.M. 60, 846 P.2d 1069 (1993); *Adobe Masters, Inc. v. Downey*, 118 N.M. 547, 549, 883 P.2d 133, 135 (1994) (citation omitted). In this case, no one has asserted that expert testimony is not required to establish professional malpractice. Plaintiff's expert, Mr. Burrage, does not discuss or even mention the forged student checks in his analysis of Defendants' professional conduct. Exhibit C (attached to Memo). Without more evidence, expert or otherwise, I must find that Plaintiff has failed to provide sufficient evidence that there is a genuine issue of fact concerning the forged student checks claim. As a result, Defendants are entitled to judgment as a matter of law on that claim. Summary judgment is appropriate on the forged student checks claim found in Counts I and IV.

### E. The Unfair Trade Practices Act Claim: Count V

Thus far, the only remaining claim not discussed by the Court is the Unfair Trade Practices Act claim found in Count V of the Complaint. Throughout their motion for summary judgment, Defendants have intimated that granting the motion for summary judgment will dispose of the entire case. However, Defendants' arguments appear to be directed towards the negligence and contract claims. In fact, Defendants made no specific mention of the applicability of their arguments to the Unfair Trade Practices Act claim. That being so, I find that the Unfair Trade Practices Act claim was not the subject of Defendants' motion for summary judgment and so at this point is the sole remaining claim in this case.

Wherefore,

IT IS ORDERED that Defendants' Motion for Summary Judgment, filed August 24, 1999 *(Doc. 35)*, is **granted in part**.

IT IS FURTHER ORDERED that the forged student checks claim found in Counts I and IV are **dismissed** with prejudice.

IT IS ALSO ORDERED that Plaintiff's Exhibits K through T (attached to the Response) are **stricken**.

DATED this 5th day of October, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:   Tanya M. Trujillo
                         Patricia Salazar Ives
                         Simons, Cuddy & Friedman
                         Santa Fe, New Mexico

Counsel for Defendants:  John M. Brant
                         Rodey, Dickason, Sloan, Akin & Robb
                         Albuquerque, New Mexico